## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AUBURN REGIONAL MEDICAL ) <br> CENTER ) <br> 202 North Division Street ) <br> Auburn, WA 98001 ) <br> ) <br> CHALMETTE MEDICAL CENTER ) <br> 9001 Patricia Street #116 ) <br> Chalmette, LA 70043 ) <br> ) <br> DOCTORS' HOSPITAL ) <br> OF STATEN ISLAND ) <br> 1050 Targee Street ) <br> Staten Island, NY 10304 ) <br> ) <br> EDINBURG REGIONAL ) <br> MEDICAL CENTER ) <br> 1102 West Trenton ) <br> Edinburg, TX 78539 ) <br> ) <br> FOREST HILLS HOSPITAL ) <br> 10201 66th Road ) <br> Forest Hills, NY 11375 ) <br> ) <br> FRANKLIN HOSPITAL ) <br> 900 Franklin Avenue ) <br> Valley Stream, NY 11580 ) <br> ) <br> HACKENSACK UNIVERSITY ) <br> MEDICAL CENTER ) <br> 30 Prospect Avenue ) <br> Hackensack, NJ 07601 ) <br> ) <br> INLAND VALLEY REGIONAL ) <br> MEDICAL CENTER ) <br> 36485 Inland Valley Drive ) <br> Wildomar, CA 92595 ) <br> ) | Civil Action No. _____ |

LONG ISLAND JEWISH )
MEDICAL CENTER )
270-05 76th Avenue )
New Hyde Park, NY 11040 )
)
MCALLEN MEDICAL CENTER )
301 West Expressway 83 )
McAllen, TX 78503 )
)
NORTHERN NEVADA MEDICAL )
CENTER (f/k/a SPARKS FAMILY )
HOSPITAL) )
2375 East Prater Way )
Sparks, NV 89434 )
)
RIVER PARISHES HOSPITAL )
500 Rue De Santé )
LaPlace, LA 70068 )
)
SOUTHSIDE HOSPITAL )
301 East Main Street )
Bay Shore, NY 11706 )
)
STATEN ISLAND UNIVERSITY )
HOSPITAL )
475 Seaview Avenue )
Staten Island, NY 10305 )
)
UHS OF NEW ORLEANS )
500 Rue de Sante )
LaPlace, LA 70068 )
)
UNIVERSAL HEALTH SERVICES, )
    INC. )
367 South Gulph Road )
King of Prussia, PA 19406 )
)
VALLEY HOSPITAL )
MEDICAL CENTER )
620 Shadow Lane )
Las Vegas, NV 89106 )
)
                and )
)

WELLINGTON REGIONAL          )
MEDICAL CENTER               )
10101 Forest Hills Boulevard )
Wellington, FL 33414         )
                             )
        Plaintiffs,          )
                             )
            v.               )
                             )
MICHAEL O. LEAVITT, Secretary, )
Department of Health and Human )
Services                     )
200 Independence Avenue, S.W. )
Washington, D.C. 20201       )
                             )
        Defendant.           )
_____ )

## COMPLAINT

Plaintiffs, by and through their undersigned attorneys, bring this action against defendant Michael O. Leavitt, in his official capacity as Secretary of the United States Department of Health and Human Services, and state as follows:

A.  **Preliminary Statement**

1.    This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§1395 *et seq.* ("the Medicare Act"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§551 *et seq.* The plaintiff-hospitals ("the Hospitals") seek to have their Medicare disproportionate share hospital ("DSH") payment determinations for the fiscal years ("FYs") at issue recalculated because those payment determinations were made using incorrect data. Defendant, the Secretary ("the Secretary") of the Department of Health and Human Services ("HHS"), has refused to consider the Hospitals' requests for relief on the grounds that the Hospitals did not timely file

3

their administrative appeals. Here, however, the time for filing these appeals should be equitably tolled because the Hospitals' failure to file timely appeals was the direct result of the Secretary's knowing and unlawful refusal to inform the Hospitals that the DSH payment determinations at issue were based on incorrect data. Medicare hospitals generally, and the Hospitals specifically, were made aware of these flaws when an administrative decision identifying them was issued in 2006. The Hospitals hereby seek an order stating that the Provider Reimbursement Review Board ("Board" or "PRRB") has jurisdiction over the appeals at issue and remanding this matter to the Board to determine whether correct data was used in the Hospitals' DSH determinations for the FYs at issue in this action.

## B.    Jurisdiction and Venue

2.    This Court has jurisdiction under 42 U.S.C. §1395oo(f) (appeal of final Medicare program agency decision) and 28 U.S.C. §§1331 (federal question) and 1361 (mandamus).

3.    Venue lies in this judicial district under 42 U.S.C. §1395oo(f) and 28 U.S.C. §1391.

## C.    Parties

4.    Plaintiffs include Universal Health Services, Inc. ("UHSI") and, except as otherwise noted, the following acute-care hospitals UHSI owns and operates, which furnish inpatient and outpatient hospital services to, *inter alia*, patients

entitled to benefits under the Medicare program and which participated in the

Medicare program for the FYs listed:

a. Auburn Regional Medical Center (Medicare Provider No. 50-0015), FYs 1987 – 1994.

b. Chalmette Medical Center (Medicare Provider No. 19-0175), FYs 1987 – 1993. This hospital closed in 2005 in the aftermath of Hurricane Katrina.

c. Edinburg Regional Medical Center (Medicare Provider No. 45-0119), FYs 1990 – 1994.

d. Inland Valley Regional Medical Center (Medicare Provider No. 05-0630), FYs 1987 – 1994.

e. McAllen Medical Center (Medicare Provider No. 45-0016), FYs 1987 – 1994.

f. River Parishes Hospital (Medicare Provider No. 19-0193), FYs 1987 – 1993. Although UHSI no longer owns this hospital, it holds the right to Medicare payment for the FYs at issue in this action.

g. Northern Nevada Medical Center (f/k/a Sparks Family Hospital) (Medicare Provider No. 29-0032), FYs 1987 – 1994.

h. UHS of New Orleans (Medicare Provider No. 19-0175), FYs 1987 – 1994. This hospital closed in 2005 in the aftermath of Hurricane Katrina.

i. Valley Hospital Medical Center (Medicare Provider No. 29-0021), FYs 1987 – 1994.

j. Wellington Regional Medical Center (Medicare Provider No. 10-0275), FYs 1987 – 1994.

5. Plaintiff Franklin Hospital (Medicare Provider No. 33-0372) is a not-for-profit acute-care hospital that furnishes inpatient and outpatient hospital services to, *inter alia*, patients entitled to benefits under the Medicare program and that participated in the Medicare program for FYs 1987 – 1994.

6.      Plaintiff Long Island Jewish Medical Center (Provider No. 33-0195) is a not-for-profit acute-care hospital that furnishes inpatient and outpatient hospital services to, *inter alia*, patients entitled to benefits under the Medicare program and that participated in the Medicare program for FYs 1987 – 1994.

7.      Plaintiff Forest Hills Hospital (Medicare Provider No. 33-0353) is a not-for-profit acute-care hospital that furnishes inpatient and outpatient hospital services to, *inter alia*, patients entitled to benefits under the Medicare program and that participated in the Medicare program for FYs 1987 – 1994.

8.      Plaintiff Southside Hospital (Medicare Provider No. 33-0043) is a not-for-profit acute-care hospital that furnishes inpatient and outpatient hospital services to, *inter alia*, patients entitled to benefits under the Medicare program and that participated in the Medicare program for FYs 1987 – 1994.

9.      Plaintiff Hackensack University Medical Center (Medicare Provider No. 31-0001) is a not-for-profit acute-care hospital that furnishes inpatient and outpatient hospital services to, *inter alia*, patients entitled to benefits under the Medicare program and that participated in the Medicare program for FYs 1987 – 1994.

10.      Plaintiff Staten Island University Hospital (Medicare Provider No. 33-0160) is a not-for-profit acute-care hospital that furnishes inpatient and outpatient hospital services to, *inter alia*, patients entitled to benefits under the Medicare program and that participated in the Medicare program for FYs 1987 – 1990 and 1993.

11.    Plaintiff Doctors' Hospital of Staten Island (Medicare Provider No. 33-0076) is a not-for-profit acute-care hospital that furnishes inpatient and outpatient hospital services to, *inter alia*, patients entitled to benefits under the Medicare program and that participated in the Medicare program for FYs 1987 – 1989. Staten Island University Hospital owns this hospital, which is now closed.

12.    Defendant Michael O. Leavitt is the Secretary of the Department of Health and Human Services, the federal department which contains the Centers for Medicare & Medicaid Services ("CMS").    The Secretary, the federal official responsible for administration of the Medicare Program, has delegated the responsibility to administer that program to CMS. Before June 14, 2001, CMS was known as the Health Care Financing Administration ("HCFA").    In this complaint, plaintiffs refer to the agency as CMS or HCFA, as appropriate, depending on the context.

## D.    General Background of the Medicare Program

13.    The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals afflicted with end-stage renal disease.    Pursuant to 42 U.S.C. §1395cc, each of the Hospitals entered into a written agreement with the Secretary to provide hospital services to eligible individuals.

14.    Under 42 U.S.C. §1395x(v)(1)(A), providers of inpatient hospital services, such as the Hospitals, are entitled to payment from Medicare for their "reasonable costs" incurred in providing services to Medicare patients, in accordance with regulations adopted by the Secretary.    Reasonable cost is defined as the "cost

7

actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services." 42 U.S.C. §1395x(v)(1)(A).

15.    In adopting regulations, the statute requires the Secretary to "take into account both direct and indirect costs of providers or services . . . in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by individuals not so covered." *Id.* The Secretary has elected to publish many rules implementing the Medicare program in various manuals, such as the Provider Reimbursement Manual.

16.    Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse hospitals, such as the Hospitals, for inpatient hospital operating costs. *See* 42 U.S.C. §1395ww(d).

17.    Payment to providers of services is commonly carried out by Medicare fiscal intermediaries, acting as agents of the Secretary pursuant to contracts with him. An intermediary is assigned to each hospital (including each of the Hospitals) that participates in Medicare. Fiscal intermediaries make periodic payments to providers, subject to subsequent adjustments for overpayments or underpayments. 42 U.S.C. §1395h.

18.    At the close of its FY, a hospital must submit a "cost report" showing both the cost incurred by it during the FY and the appropriate portion of those costs to be allocated to, and paid by, Medicare.  42 C.F.R. §§413.24 and 413.50.  The hospital's intermediary is required to analyze and audit the cost report and issue a Notice of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its Medicare reimbursement for the cost reporting period.

19.    If a hospital is dissatisfied with its intermediary's final determination of total Medicare program reimbursement for a cost reporting period, as reflected in the NPR, it may seek to have the NPR corrected or altered in one of two ways:

a.    The hospital has a right to obtain a hearing before the Board by filing an appeal with the Board within 180 days of receiving its NPR.  42 U.S.C. §1395oo.

b.    The hospital may request reopening of an intermediary's determination within three years of the date of notice to the hospital of the intermediary's determination.  42 C.F.R. §405.1885(a).

20.    Regardless whether a hospital files for a Board hearing or seeks reopening, regulations adopted by the Secretary require an intermediary's determination to be reopened within three years of the date of notice of it to the hospital if CMS notifies the intermediary that the determination is in any way "inconsistent with the applicable laws, regulations, or general instructions" issued by CMS.  42 C.F.R. §405.1885(b).

**E.**    **Procedure for Administrative and Judicial Review of PRRB Decisions**

21.    In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, under 42 C.F.R. §405.1873, the Board is authorized to decide questions relating to its jurisdiction.  The decision of the Board on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the Board's decision.  42 U.S.C. §1395oo(f)(1);  42 C.F.R. §§405.1875 and 405.1877.  The Secretary has delegated his authority under the statute to review Board decisions to the CMS Administrator.

22.    A hospital may obtain judicial review of a final administrative decision, including a decision relating to the jurisdiction of the Board, by filing suit within 60 days of receipt of the decision in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia.  42 U.S.C. §1395oo(f).

23.    The Supreme Court has held that a decision denying a provider's request for reopening under 42 C.F.R. §405.1885(a) is not subject to judicial review. *Your Home Visiting Nurse Services, Inc. v. Shalala*, 525 U.S. 449 (1999).  However, judicial relief is available under the equitable remedy of mandamus where a hospital has a clear right to the relief sought and the Secretary has a defined and non-discretionary duty to honor that right.  *Monmouth Med. Ctr. ("Monmouth") v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001).

**F.    PPS and the DSH Adjustment**

24.    Under PPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospitals. Rather, they are based on predetermined, nationally applicable rates, subject to certain payment adjustments. 42 U.S.C. §1395ww(d)(1)-(5); 42 C.F.R. Part 412. One of these is known as the "disproportionate share hospital" or "DSH" payment. *See* 42 U.S.C. §1395ww(d)(5)(F).

25.    Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to a payment, known as the DSH adjustment, in addition to standard Medicare payments. 42 U.S.C. §1395ww(d)(5)(F). Congress enacted the DSH payment in recognition of the relatively higher costs associated with providing services to low-income patients. These higher costs have been found to result from the generally poorer health of low-income patients. The DSH payment provides additional Medicare reimbursement to hospitals for the increased cost of providing services to low-income Medicare beneficiaries.

26.    There are two methods of determining qualification for a DSH adjustment: the "proxy method" (42 U.S.C. §1395ww(d)(5)(F)(i)(I)) and the "Pickle method" (42 U.S.C. §1395ww(d)(5)(F)(i)(II)). The Hospitals' entitlement to a DSH adjustments was determined using the proxy method, under which their entitlement to a DSH adjustment, as well as the amount of the DSH adjustment, is based on the Hospitals' DSH percentage. 42 U.S.C. §1395ww(d)(5)(F)(v) and (vi).

11

27.    The DSH percentage is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis. The first fraction, referred to as the "Medicare Proxy," is intended to account for inpatients who are Medicare beneficiaries entitled to supplementary security income ("SSI"), a federal low-income benefit supplement.   The second fraction, referred to as the "Medicaid Proxy," is intended to account for inpatients who are not entitled to Medicare benefits, but who qualify for medical assistance under a State's Medicaid State plan.

28.    This action concerns the Medicare Proxy, which is defined as follows under 42 U.S.C. §1395ww(d)(5)(D)(vi)(I):

> the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and **were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter**, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter.

(Emphasis added.)  The Medicare Proxy, therefore, is the percentage of a hospital's inpatients who received Medicare Part A benefits who were also entitled to SSI benefits when they were receiving inpatient services at the hospital.  This is also known as the "SSI percentage."

29.    CMS determines the SSI percentage for hospitals that qualify for DSH payment but does not automatically share the underlying data with the affected hospitals.  In fact, CMS takes the position that some of the data cannot be given to

hospitals.  *See* 70 Fed. Reg. 47,440 (August 12, 2005).  CMS calculates these percentages using federal fiscal year ("FFY") (October 1 through September 30) data.

30.    Section 3-20.3 of the Medicare Claims Processing Manual ("MCPM") requires Medicare fiscal intermediaries to make DSH payment determinations using the SSI percentage supplied to them by CMS.  Accordingly, DSH hospitals, such as the Hospitals, do not develop their own SSI percentages.  Further, CMS has acknowledged that a provider is not required to claim a DSH payment as part of the formal cost reporting process.  *See* 51 Fed. Reg. 31457-58 (September 3, 1986).  Rather, Medicare fiscal intermediaries are required to make the proper DSH payment determinations.  In accordance with this duty, and the MCPM, the Hospitals' Medicare fiscal intermediaries made the DSH payment determinations at issue in this action using the SSI percentages furnished to them by CMS.

**G.    Calculation of the SSI Percentage**

31.    The data used to determine the SSI percentage was addressed in significant detail in the decisions issued by the Board and CMS Administrator in *Baystate Hospital v. Mutual of Omaha Insurance Co. ("Baystate")*, PRRB Case No. 2006-D20 (PRRB Dec. March 17, 2006), *modified* (CMS Adm. Dec. May 11, 2006), complaint filed July 14, 2006 *sub nom Baystate Medical Center  v. Leavitt et al.*, 06-cv-1263-JDB (D.D.C. filed July 14, 2006).

32.    As explained in the *Baystate* administrative decisions, CMS retrospectively calculates the SSI percentage using data from the June updates of

the Medicare Provider Analysis and Review ("MEDPAR") file following the end of the prior FFY.  CMS Adm. Dec. at 27.[1]  CMS determines these percentages by matching its MEDPAR files of all Medicare claims paid to a hospital during the period with the file maintained by the Social Security Administration ("SSA") of all individuals entitled to SSI benefits during the same period.  *Id.* at 16-17.  The resulting "match" of these two data sets yields a hospital's number of patient days for the prior FFY that were attributable to hospital patients who were entitled both to Medicare Part A benefits and to SSI benefits under Title XVI of the Social Security Act.  This number is divided by the total number of days attributable to patients who were entitled to Medicare Part A benefits, and the final result is the hospital's SSI percentage.

33.    The match process is based on two data sets – an annual data tape from SSA and CMS' MEDPAR file.  Each year SSA sends CMS a file that contains the following information for each SSI recipient on the tape:  (1) truncated last name and first initial, (2) social security number ("SSN") or railroad retirement program identification number, (3) date of birth, (4) gender, and (5) 42 monthly entries using the "Title II number," which indicates the payment or non-payment of SSI benefits during the period covered by the file.  *Id.* at 15-16.  The Title II number consists of the SSN of the person whose work history qualified for benefits (the "Title II record holder"), and an alpha-numeric suffix that reflects the relationship

---

[1]    References in this Complaint to CMS Administrator's Decision in *Baystate* are set forth as "CMS Adm. Dec. at XX," while references to the Board's decision in that appeal are set forth as "Board Dec. at XX."

between the beneficiary and the Title II record holder. Board Dec. at 13. Because of the various ways of receiving Title II benefits, the Title II number is not necessarily unique to an individual. *Id.*

34.    The MEDPAR file contains, for each inpatient stay during the period covered by the file, (1) the hospital's Medicare provider number, (2) the patient's health insurance claim account number ("HICAN"), (3) the dates of admission to and discharge from the hospital, (4) the total inpatient length of stay, (5) the number of days of the stay covered by Medicare Part A, and (6) the number of days in the stay for which the patient was determined to be eligible for SSI benefits, based on CMS' match of SSA and MEDPAR data. CMS Adm. Dec. at 16. CMS generates the HICAN by taking the SSN or railroad retirement number, which may or may not be the beneficiary's own number, from a SSI record generated by CMS and an alpha-numeric beneficiary identification code. Board Dec. at 15.

35.    CMS accomplishes the matching process by attempting to match the HICAN contained in the MEDPAR file to the Title II number from the SSA file. *Id.* Patient days that are matched as a result of this process are included in the numerator of the Medicare Proxy for purposes of determining a hospital's DSH payment. In general, the more days that are counted in the numerator of the Medicare proxy, the greater the hospital's DSH payment.

**H.**   **Flaws in the SSI Percentage Identified in *Baystate* Board Decision**

36.   The Board's decision in *Baystate* included some background and identified many flaws concerning CMS' calculation of the SSI percentage, and CMS' awareness of these flaws.

37.   CMS requires PPS hospitals to use the SSI percentages that CMS provides. "42 C.F.R. 412.106(b) provides that CMS will calculate a hospital's Medicare fraction . . . ." Board Dec. at 6. "[T]he DSH statute directs CMS to determine the SSI fraction . . . ." *Id.* at 8.

38.   CMS has known for many years that its SSI percentages were incorrect for many FYs, including the ones at issue in the *Baystate* appeal, because the agency was aware that (1) the process it used to match beneficiary specific information with SSA data to determine the SSI percentage was flawed and (2) several problems existed with data used to determine the SSI percentage.

a.   "Both parties consistently acknowledged during the hearing that the Social Security number is the best unique identifier. However, despite CMS' stated intent to use Social Security numbers as the patient match criteria, the evidence showed that CMS has never matched Social Security numbers on the SSI data tape with Social Security numbers on the MEDPAR in the calculation of the SSI ratios." *Id.* at 12-13.

b.   "[I]ndividuals who received a forced payment during their inpatient stays were not shown as having been entitled to SSI for such periods on SSA

annual tapes. Shafer [a CMS employee] testified that forced payments were a common occurrence during the periods at issue here. Thus, the omission of all these records was a systematic and recurring error that had the effect of understating the SSI ratios." *Id.* at 26.

c.    CMS should have known that the omission of retroactive SSI awards was a problem. "CMS' 1996 summary report showed that the ratio of the number of stays with new SSI days added . . . to the number of stays with old SSI days deleted . . . was greater than 17:1 for most years." Theoretically, and as CMS claimed, the two categories could have offset each other resulting in a wash. Yet, with the ratio at 17:1, the stays with new SSI days added were not offset by any countervailing situation. *Id.* at 28.

d.    CMS knew that stale records were a problem with SSI fractions. Yet, in a June 1995 proposed rule to change the process of recalculation of the SSI ratio based on a hospital's cost reporting period, CMS claimed that the result of recalculating the ratio was "invariably" lower SSI ratios due to problems with the hospital's data. Five months later CMS requested corrected SSI records from SSA because its MEDPAR records were contaminated. CMS created a set of "special" MEDPAR files to allow CMS to determine the number of hospital stays in which the value of the SSI days increased or decreased. It subsequently used these special MEDPAR files for "everything" and claims that, even though it possessed these tapes as late as 1997, it either lost or destroyed those records. *Id.* at 33-34.

e.    "The uncontroverted evidence shows that the CMS knew, at least by 1993, that there was a problem with the SSI data that CMS had been receiving from SSA." *Id.* at 25.

39.    CMS never revealed these flaws to PPS hospitals and made false or misleading statements, which induced PPS hospitals into believing that the SSI percentages were correct when, in fact, they actually were incorrect.

a.    CMS made false representations in a proposed and final rule "that SSA, not CMS computes the SSI fractions, and that SSA does not release the underlying data to CMS." *Id.* at 34.

b.    CMS knew that its "record retention failures" made it impossible for hospitals to demonstrate the financial impact caused by the flaws in the process. *Id.* at 32.

c.    CMS published misleading information about whether it counted HMO days in the SSI fraction.    CMS published a notice in the Federal Register September 4, 1990 that it had been counting HMO days in the SSI fraction since 1987, but CMS' MEDPAR programmer, Mr. Dean, testified that the field on MEDPAR for HMO days "hasn't been used since the time that I started running MEDPAR" in 1995." *Id.* at 39-40.

40.    In *Loma Linda Community Hospital v. Shalala*, 907 F. Supp. 1399 (C.D. Cal. 1995), a DSH hospital sought to recalculate its SSI percentage based on its independent evaluation of the data on which the percentage should have been

based and brought its dispute to the Board. The court ruled that the hospital was entitled to determine its SSI factor independently and recognized its right to obtain access to the underlying data used by CMS in calculating the applicable SSI percentage.

## I.    Equitable Tolling

41.    The federal government may only be sued if Congress has "unequivocally expressed" its intention to waive the sovereign's immunity. *Irwin v. Veterans Admin.* ("*Irwin*"), 498 U.S. 89, 95 (1990). That waiver may address not only what action can be redressed through the lawsuit but also how and when the action must be brought. In general, a lawsuit against the federal government where Congress has waived sovereign immunity must be brought within the time frame set forth in the congressional waiver.

42.    Equitable tolling extends the time for such an action to be brought. In *Irwin*, the Supreme Court addressed whether equitable tolling is applicable to lawsuits against the federal government or whether the time to bring an action against the federal government may only be extended by an "unequivocal expression" from Congress. The issue before the Court, therefore, was whether equitable tolling could, in effect, broaden "the congressional waiver" of sovereign immunity, by allowing a lawsuit to be bought beyond the time limit established by Congress. *Id.*

43.    The Supreme Court held that "making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to

private suits, amounts to little, if any, broadening of the congressional waiver." *Id.*
The Court went on to state that equitable tolling "should also apply to suits against
the United States" and that Congress "may provide otherwise if it wishes to do so."
*Id.* at 96. Since *Irwin* was decided, Congress has made no effort to "provide
otherwise." Accordingly, there is no question that equitable tolling is available to
those seeking to bring an otherwise untimely action against the United States.

44.    Under the holding in *Irwin* and other cases, there also is no question
that equitable tolling is applicable to regulatory filing deadlines, including
deadlines for filing Medicare administrative appeals. *See, e.g., Bradford Hospital v.
Shalala ("Bradford")*, 108 F. Supp. 2d 473 (W.D. Pa. 2000).

45.    Four years before *Irwin* was decided, the Supreme Court found in
*Bowen v. City of New York ("City of New York")*, 476 U.S. 467 (1986), that Congress
had explicitly allowed for equitable tolling to apply in Medicare cases by including
language in 42 U.S.C. §405(g) providing that civil actions against the Secretary
must filed "within sixty days . . . or within such further times as the Secretary may
allow." By allowing the Secretary to extend the filing deadline, the Court found
that Congress had expressed the "clear intention to allow tolling in some cases."
*City of New York*, 476 U.S. at 480.

46.    The Supreme Court also found that the 60-day filing requirement
under 42 U.S.C. §405(g) is not "jurisdictional, but rather is a statute of limitations
waivable by the parties." *Id.* at 476. The 180-day filing period for Board appeals in
42 U.S.C. §1395oo(a) is similarly not jurisdictional. The Secretary has, in fact,

conceded this point by adopting a regulation, 42 C.F.R. §405.1841(b), which explicitly allows the 180-day filing period to be waived. *Ozark Mountain Reg'l Rehab. Ctr., Inc. v. HHS*, 798 F. Supp. 16 (D.D.C. 1992).

47.   In *Irwin*, the Court specifically stated that equitable tolling is available "where the complainant has been induced or tricked by his adversary's misconduct in allowing the filing deadline to pass." *Irwin*, 498 at 96.

48.   When considering whether equitable tolling applies to this action, this Court should be mindful of the concern expressed by the Supreme Court that this Court not "assume the authority to narrow the waiver that Congress intended." *City of New York*, 476 U.S. at 479.   The Court also should be mindful of the prohibition of "cross-subsidization" under 42 U.S.C. §1395x(v)(1)(A), which requires the Secretary to "take into account both direct and indirect costs of providers or services . . . in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by individuals not so covered."  In order for the Hospitals to be properly paid, so that their Medicare patients are not cross-subsidized by non-Medicare patients in violation of 42 U.S.C. §1395x(v)(1)(A), the SSI percentage used must be correct, which did not occur.

49.   Because the Board found in *Baystate* that DSH payments were improperly calculated, the rejection of equitable tolling would violate the cross-subsidization bar and, also, would impermissibly narrow the waiver of sovereign immunity that Congress explicitly intended.

**J.    Facts Applicable to the Hospitals**

50.    For the FYs at issue in this action, the Medicare fiscal intermediaries for each of the Hospitals made a determination about whether the Hospitals were entitled to a DSH payment and, if so, the amount of that payment.   When making these determinations, the intermediaries were required to use, and is understood by the Hospitals to have used, the SSI percentage supplied to them by CMS.

51.    The DSH determinations were made by the Hospitals' Medicare fiscal intermediaries without regard to whether the Hospitals requested a DSH payment. This is because CMS has acknowledged that a Medicare-participating hospital is not required to claim a DSH payment as part of the formal cost reporting process. *See* 51 Fed. Reg. 31457-58 (September 3, 1986).   Rather, intermediaries are required to make the proper DSH payment determinations.

52.    On or about September 12, 2006, the Hospitals appealed their DSH payment determinations for the FYs at issue to the Board on the grounds that they were made using an understated SSI percentage ("the DSH-SSI Issue").  Five of the Hospitals filed individual appeals (Hackensack University Medical Center – PRRB Case No. 06-2296; Long Island Jewish Medical Center – PRRB Case No. 06-2352; Forest Hills Hospital – PRRB Case No. 06-2354; Franklin Hospital – PRRB Case No. 06-2355, and Southside Hospital - PRRB Case No. 06-2356).   Two of the Hospitals, Staten Island University Hospital and Doctors' Hospital of Staten Island, filed a Group Appeal (Crowell & Moring 97-93 DSH/SSI Equitable Tolling Group

Appeal – PRRB Case No. 06-2357G). The remaining ten Hospitals[2] filed a separate Group Appeal (UHS 87-94 DSH/SSI Equitable Tolling Group Appeal – PRRB Case No. 06-2359G).

53.    Each of these seven appeals was filed more than three years after the Medicare NPRs had been issued for each of the FYs at issue, but within 180 days of the issuance of the Board's decision in *Baystate*. *See* 42 U.S.C. §1395oo.

54.    When filing their appeals to the Board, the Hospitals noted that the Board has authority under 42 C.F.R. §405.1841(b) to extend the time for filing an appeal for up to three years after the issuance of the NPR for "good cause," but that this regulation did not apply because the NPRs at issue had been issued more than three years before the appeal was filed. Accordingly, the Hospitals asked the Board to find that this appeal is timely filed under the principle of equitable tolling, citing several authorities, including *Bradford, supra,* where (1) the Board applied the principle of equitable tolling to extend a Medicare filing deadline and (2) the court found that equitable tolling applies to deadlines for filing Medicare administrative appeals.

---

[2]    Auburn Regional Medical Center, Chalmette Medical Center, Edinburg Regional Medical Center, Inland Valley Regional Medical Center, McAllen Medical Center, River Parishes Hospital, Northern Nevada Medical Center, UHS of New Orleans, Valley Hospital Medical Center, and Wellington Regional Medical Center.

55.    The Hospitals further explained that the Board should find that equitable tolling applies because the Hospitals' failure to file a timely appeal on the DSH-SSI Issue was the direct result of CMS's knowing and unlawful refusal to inform hospitals paid under Medicare PPS, such as the Hospitals, that their SSI percentages were incorrectly understated for the FYs at issue. This is clear from the Board's decision in *Baystate*, where the Board reversed the government's flawed SSI percentage determination and remanded the case to the Medicare fiscal intermediary to recalculate that determination in accordance with the Board's decision.

56.    Hospitals generally, and the Hospitals specifically, were made aware of these flaws when the *Baystate* decision was issued.

57.    The Board dismissed the Hospitals' appeals without a hearing, issuing substantively identical decisions in each of the seven appeal. *See, e.g.,* PRRB Decision in UHS 87-94 DSH/SSI Equitable Tolling Group Appeal – PRRB Case No. 06-2359G (Exhibit A).    The Board dismissed the appeals on the grounds that it lacked jurisdiction because the appeals were not timely filed, stating "there is no dispute that the request for hearing was not made within three years of the issuance of the NPRs." *See, e.g.,* Exhibit A at 3. The Board also stated that it "does not have general equitable powers and cannot grant equitable relief such as equitable tolling." *Id.* These decisions violated the APA because, *inter alia,* they were not made in accordance with law.

58.    In a letter dated November 1, 2007 (Exhibit B), the CMS Administrator declined to review the Board's decisions in these seven appeals and acknowledged that (a) the Board's September 18, 2007 decisions are the Secretary's final decisions for purposes of judicial review and (b) judicial review of the Board's decisions is available.

## COUNT I

59.    Plaintiffs hereby incorporate by reference paragraphs 1 through 58 herein.

60.    The Board's decisions holding that it lacks jurisdiction over the appeals at issue in this action were unlawful under the APA and other authority.  These decisions must be reversed because (a) the Board and the Secretary have the authority to grant equitable tolling relief and (b) the Hospitals were entitled to such relief with respect to the DSH-SSI Issue for the FYs at issue in this action as the Hospitals' failure to file these appeals within the time limits set forth in 42 U.S.C. §1395oo was the direct result of CMS's knowing and unlawful refusal to inform the Hospitals that their SSI percentages were incorrectly understated for these FYs. Accordingly, plaintiffs are entitled to an order stating that the Board has jurisdiction over the appeals at issue and remanding them to the Board to determine whether the correct SSI percentages were used in the DSH payment determinations that were made with regard to the Hospitals for the FYs at issue in this action.

## COUNT II

61.    Plaintiffs hereby incorporates paragraphs 1 through 60 herein.

62.    The Hospitals' Medicare fiscal intermediaries have the non-discretionary duty to use correct SSI percentages when determining whether the Hospitals were entitled to DSH payments for the FYs at issue in this action, and the amount of any DSH payments due.  Accordingly, plaintiffs are entitled to issuance of a writ of mandamus under the Medicare Act, the *Monmouth* decision, and other authority requiring the Secretary to order the Hospitals' Medicare fiscal intermediaries, or their successors in interest, to make new DSH determinations for the FYs at issue in this action using correct SSI percentages.

## COUNT III

63.    Plaintiffs hereby incorporate by reference paragraphs 1 - 62 herein.

64.    The Hospitals' Medicare fiscal intermediaries must use correct SSI percentages when determining whether the Hospitals were entitled to DSH payments for the FYs at issue in this action, and the amount of any DSH payments due.  Accordingly, under the All Writ's Act, 28 U.S.C. §1651, and other authority, plaintiffs are entitled to issuance of an order requiring the Secretary to order the Hospitals' Medicare fiscal intermediaries, or their successors in interest, to make new DSH determinations for the FYs at issue in this action using correct SSI percentages.

**K.**    **Requested Relief**

WHEREFORE, plaintiffs request:

1.    An order stating that the Board has jurisdiction over the appeals at issue in this action and remanding this matter to the Board to determine whether the correct SSI percentages were used in the Hospitals' DSH payment determinations for the FYs at issue;

2    The issuance of a writ of mandamus requiring the Secretary to order the Hospitals' Medicare fiscal intermediaries, or their successors in interest, to make new DSH determinations for the FYs at issue in this action using correct SSI percentages;

3.    An order requiring the Secretary to order the Hospitals' Medicare fiscal intermediaries, or their successors in interest, to make new DSH determinations for the FYs at issue in this action using correct SSI percentages;

4.    Legal fees and costs of suit incurred by plaintiffs; and

5.    Such other relief as this Court may consider appropriate.

Respectfully submitted,

Dated: November 15, 2007

Robert L. Roth, Esq. (D.C. Bar No. 441803)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Tel: (202) 624-2870
Fax: (202) 628-5116
Attorneys of Record for Plaintiffs

27

# EXHIBIT A



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
Phone: 410-786-2671          FAX: 410-786-5298
Internet: www.cms.hhs.gov/PRRBReview

Suzanne Cochran, Esq., Chairperson
Elaine Crews Powell, CPA
Anjali Mulchandani-West
Yvette C. Hayes
Michael D. Richards

Refer to:

06-2357G
CERTIFIED MAIL

**RECEIVED**
SEP 1 9 2007

SEP 1 8 2007

Robert L. Roth, Esq.
Crowell & Moring, LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004-2595

Linda Uzzle
Blue Cross Blue Shield Association
7004 Security Blvd.
Baltimore, MD 21244-2534

RE: Crowell & Moring 87-93 DSH/SSI Equitable Tolling Grp
Provider Nos. Varopis
FYE 1987-1993
PRRB Case No. 06-2357G

Dear Mr. Roth and Ms. Uzzle:

The Provider Reimbursement Review Board (Board) has reviewed the jurisdictional briefs of the parties in the above-referenced appeal. The jurisdictional decision of the Board is set forth below.

**Background**

Procedural History

The Providers filed this appeal on September 12, 2006 for the fiscal years (FYs) 1987-1993. There is no dispute regarding the fact that the Notices of Program Reimbursement (NPRs) for the fiscal years under dispute were all issued more than three years before the current request for hearing was filed. The Providers have requested that the Board consider whether the appeal is timely filed under the doctrine of equitable tolling over the issue under dispute: whether the Intermediary used an understated Supplemental Security Income (SSI) percentage when calculating the disproportionate share (DSH) adjustment.

Positions of the Parties

The Providers observe that the Centers for Medicare & Medicaid Services (CMS) calculates the SSI percentage but does not and believes its cannot share the data with providers Further, the Claims Processing Manual (CMS Pub. 100-04) requires that intermediaries calculate the DSH adjustment using the SSI percentage furnished to them by CMS. The Providers point to the decision in <u>Loma Linda Hospital v. Shalala</u>[1] to support its position that CMS will not release SSI data. The Board's decision in <u>Baystate</u>

---

[1] 907 F. Supp. 1399 (C.D. Calif. 1995)

Provider Reimbursement Review Board
Page 2 Robert Roth/Linda Uzzle                                    CN 06-2357G

Medical Center v. Mutual of Omaha[2] (Baystate) is cited for the proposition that the SSI
percentage is understated.

The Providers explained in their hearing request that their failure to file a timely appeal
was the result of CMS' alleged knowing and unlawful refusal to inform hospitals that the
SSI percentage was incorrectly stated for the fiscal years under appeal. Under 42 C.F.R. §
405.1841(b), the Board has the authority to extend the time for filing an appeal for up to
three years from the issuance of the NPR based on "good cause." Good cause for late
filing cannot be considered in these cases because the cases are being filed more than
three years after the issuance of the NPRs for the FYEs in question. Consequently, the
Providers are requesting that the Board apply the principle of equitable tolling and find
that the appeal is timely.

The decision in Bradford Hospital v. Shalala[3] is cited for the proposition that equitable
tolling is proper "when the principles of equity would make the rigid application of a
limitation period unfair." In addition, Irwin v. Veterans Administration[4] (Irwin) is cited
for the proposition that equitable tolling applies "where the complainant has been induced
or tricked by his adversary's misconduct into allowing the filing deadline to pass." The
Providers assert that its failure to file on time was the direct result of CMS' failure to
inform providers that the SSI percentages were understated for the FYEs under appeal.
The Providers' believe that the Board's decision in Baystate establishes the fact that the
SSI percentage is understated.

The Intermediary asserts that the Board lacks jurisdiction over the appeal because the
NPRs were issued more than three years before the appeal was filed; therefore, the Board
cannot consider good cause for late filing. Further, the Providers cannot establish that
there was misconduct on the part of the other party which would make Irwin applicable.
In addition, the Providers cannot prove that they were "induced or tricked" into missing
appeal deadlines. There was no evidence in the Baystate decision that CMS knew 20
years ago that there was any defect in the SSI data. The Intermediary believes that the
doctrine of equitable tolling is not appropriate here because the Providers are simply
trying to take advantage of the favorable decision in Baystate.

The Intermediary points out that in Anaheim Memorial Hospital v. Blue Cross of
California[5] (Anaheim) the Board found that it lacks the general equitable powers
necessary to consider equitable tolling. The decision in Bradford can be distinguished
from the current case because it dealt with the filing for a redetermination of the
provider's hospital specific rate which is different from the timely filing of appeals.
Finally, the Intermediary points out that the statute of limitations for considering good
cause is a statute of repose because it sets the final period of time for an appeal to be

---

[2] PRRB Dec. 2006-D20 (March 17, 2006) (Medicare & Medicaid Guide (CCH)) ¶ 81,468; modified CMS
Administrator's Dec. May 11, 2006 (Medicare & Medicaid Guide (CCH)) ¶ 81,506.
[3] 108 F. Supp. 2d 473 (W.D. Pa. 2000)
[4] 498 U.S. 89, 96 (1990)
[5] PRRB Dec. 2000-D72 (Medicare and Medicaid Guide (CCH)) ¶ 80,257.

Provider Reimbursement Review Board
Page 3 Robert Roth/Linda Uzzle                                    CN 06-2357G

filed. The purpose is "to relieve potential defendants from anxiety and liability over acts committed long ago."

<u>Decision of the Board</u>

The Board finds that it lacks jurisdiction over the Providers' appeal of the fiscal years 1987-1993 because the appeal was not timely filed.

Pursuant to 42 U.S.C. § 1395oo(a) and 42 C.F.R. §§ 405.1835 and 405.1841, a provider has a right to a hearing before the Board with respect to a cost claimed on a timely filed cost report if it is dissatisfied with the final determination of the intermediary, the amount in controversy is $50,000 or more for a group appeal and the request for hearing is filed within 180 days of the date of the final determination. Pursuant to 42 C.F.R. § 405.1841(b) the Board may consider a request for good cause for late filing if such a request was made within three years after the date the notice of intermediary determination is mailed to the provider. In this case, there is no dispute that the request for hearing was not made within three years of the issuance of the NPRs and good cause cannot be considered.

Further, consistent with the decision in <u>Anaheim</u>, the Board concludes that it does not have general equitable powers and cannot grant equitable relief such as equitable tolling. The Board is an administrative forum and, unlike the courts, does not have general equitable powers but rather only the powers granted to it by statute and regulation. The equitable powers granted to the Board are found in 42 C.F.R. §§ 405.1841(b) (good cause) and 405.1885 (reopenings).

Review of this determination is available under the provisions of 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. §§ 405.1875 and 405.1877.

<u>Board Members Participating</u>

    Suzanne Cochran, Esq.
    Elaine Crews Powell, CPA
    Anjali Mulchandani-West, CPA
    Yvette C. Hayes                  FOR THE BOARD:

                                        Suzanne Cochran, Esq.
                                        Chairman

Enclosures: 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. §§ 405.1875 and 405.1877

cc: George Porette, National Government Services (NY)
    Wilson Leong, BCBSA

**42 § 1395oo**  SOCIAL SECURITY  Ch. 7

**(f) Finality of decision; judicial review; determinations of Board authority; jurisdiction; venue; interest on amount in controversy**

(1) A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision.  Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received.  Providers shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines (on its own motion or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received.  If a provider of services may obtain a hearing under subsection (a) of this section and has filed a request for such a hearing, such provider may file a request for a determination by the Board of its authority to decide the question of law or regulations relevant to the matters in controversy (accompanied by such documents and materials as the Board shall require for purposes of rendering such determination).  The Board shall render such determination in writing within thirty days after the Board receives the request and such accompanying documents and materials, and the determination shall be considered a final decision and not subject to review by the Secretary.  If the Board fails to render such determination within such period, the provider may bring a civil action (within sixty days of the end of such period) with respect to the matter in controversy contained in such request for a hearing.  Such action shall be brought in the district court of the United States for the judicial district in which the provider is located (or, in an action brought jointly by several providers, the judicial district in which the greatest number of such providers are located) or in the District Court for the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7 of Title 5 notwithstanding any other provisions in section 405 of this title.  Any appeal to the Board or action for judicial review by providers which are under common ownership or control or which have obtained a hearing under subsection (b) of this section must be brought by such providers as a group with respect to any matter involving an issue common to such providers.

(2) Where a provider seeks judicial review pursuant to paragraph (1), the amount in controversy shall be subject to annual interest beginning on the first day of the first month beginning after the 180-day period as determined pursuant to subsection (a)(3) of this section and equal to the rate of return on equity capital established by regulation pursuant to section 1395x(v)(1)(B) of this title and in effect at the time the civil action authorized under paragraph (1) is commenced, to be awarded by the reviewing court in favor of the prevailing party.

(3) No interest awarded pursuant to paragraph (2) shall be deemed income or cost for the purposes of determining reimbursement due providers under this chapter.

Determination and Appeals

Sec. 405.1875

## Sec. 405.1875  Administrator's review

(a) *General rule*

(1) Except for a Board determination under Sec. 405.1842 that it lacks the authority to decide an issue, the Administrator, at his or her discretion, may review any final decision of the Board, including a decision under Sec. 405.1873 about the Board's jurisdiction to grant a hearing. The Administrator may exercise this discretion on his or her own motion, in response to a request from a party to a Board hearing or in response to a request from HCFA.

(2) The Office of the Attorney Advisory will examine the Board's decisions, the requests made by a party or HCFA and any submission made in accordance with the provisions of this section in order to assist the Administrator in deciding whether to exercise this review authority.

(b) *Request for review*

A party or HCFA requesting the Administrator to review a Board decision must file a written request with the Administrator within 15 days of the receipt of the Board decision.

(c) *Criteria for deciding whether to review*

In deciding whether to review a Board decision, either on his or her own motion or in response to a request from a party to the hearing or HCFA, the Administrator will normally consider whether it appears that:

(1) The Board made an erroneous interpretation of law, regulation or HCFA Ruling;

(2) The Board's decision is not supported by substantial evidence; or

(3) The case presents a significant policy issue having a basis in law and regulations, and review is likely to lead to the issuance of a HCFA Ruling or other directive needed to clarify a statutory or regulatory provision;

(4) The Board has incorrectly assumed or denied jurisdiction or extended its authority to a degree not provided for by statute, regulation or HCFA Ruling; and

(5) The decision of the Board requires clarification, amplification, or an alternative legal basis for the decision.

(d) *Decision to review*

(1) Whether or not a party or HCFA has requested review, the Administrator will promptly notify the parties and HCFA whether he or she has decided to review a decision of the Board and, if so, will indicate the particular issues he or she will consider.

(2) The Administrator may decline to review a case or any issue in a case even if a party has filed a written request for review under paragraph (b) of this section.

(e) *Written submissions*

(1) Within 15 days of receipt of a notice that the Administrator has decided to review a Board decision, a party or HCFA may submit to the Administrator, in writing:

(i) Proposed findings and conclusions;

(ii) Supporting views or exceptions to the Board decision;

(iii) Supporting reasons for the exceptions and proposed findings; and

(iv) A rebuttal of the other party's request for review or other submissions already filed with the Administrator.

(2) These submissions sh-      limited to issues the Administrator has decided to review and confined to the record of the Board hearing.

(3) A party or HCFA, within 15 days of receipt of a notice that the Administrator has decided to review a decision, may also request that the decision be remanded and state reasons for doing so. Reasons for a request to remand may include new, substantial evidence concerning—

(i) Issues presented to the Board; and

(ii) New issues that have arisen since the case was presented to the Board.

(4) A copy of any written submission made under this paragraph shall be sent simultaneously to each other party to the Board hearing and to HCFA, if HCFA has previously—

(i) Requested that the Administrator review a Board decision or filed a written submission in response to a party's request for review;

(ii) Responded to a party's request for review; or

(iii) Submitted material after the Administrator has announced that he or she will review a Board decision.

(f) *Ex parte communications prohibited*

All communications from any of the parties or HCFA about a Board decision being reviewed by the Administrator must be in writing and must contain a certification that copies have been served on the parties and HCFA, as appropriate. The Administrator will not consider any communications that does not meet these requirements or is not submitted within the required time limits.

(g) *Administrator's decision*

(1) If the Administrator has notified the parties and HCFA that he or she has decided to review a Board decision, the Administrator will affirm, reverse, modify or remand the case.

(2) The Administrator will make this decision within 60 days after the provider received notification of the Board decision and will promptly mail a copy of the decision to each party and to HCFA.

(3) Any decision other than to remand will be confined to—

(i) The record of the Board, as forwarded by the Board;

(ii) Any materials submitted under paragraphs (b) or (e) of this section; and

(iii) Generally known facts that are not subject to reasonable dispute.

(4) The Administrator may rely on prior decisions of the Board, the Administrator and the courts, and other applicable law, whether or not cited by the parties and HCFA.

(h) *Remand*

(1) A remand to the Board by the Administrator vacates the Board's decision.

(2) The Administrator may direct the Board to take further action with respect to the development of additional facts or new issues, or to consider the applicability of laws or regulations other than those considered by the Board. The following are not acceptable bases for remand—

(i) Presentation of evidence existing at the time of the Board hearing that was known or reasonably could have been known;

(ii) Introduction of a favorable court case that was either not available in print at the time of the Board hearing or was decided after the Board hearing;

(iii) Change of a party's representation before the Board;

(iv) Presentation of an alternative legal basis concerning an issue in dispute; or

(v) Attempted retraction of a waiver of a right made before or at the Board hearing.

(3) After remand, the Board will take the action requested in the remand action and issue a new decision.

(4) The new decision will be final unless the Administrator reverses, affirms, modifies, or again remands the decision in accordance with the provisions of the section.

Sec. 405.1877    Judicial review

(a) *General rule*

Section 1878(f) of the Act permits a provider to obtain judicial review of a final decision of the Board, or of a reversal, affirmation, or modification by the Administrator of a Board decision, by filing a civil action pursuant to the Federal Rules of Civil Procedure within 60 days of the date on which the provider received notice of—

(1) A final decision by the Board; or

(2) Any reversal, affirmance, or modification by the Administrator. The Board's decision is not final if the Administrator reverses, affirms or modifies the decision within 60 days of the date on which the provider received notice of the decision.

(b) *Administrator declines to review a Board decision*

If the Administrator declines to review a Board decision, the provider must file its appeal within 60 days of receipt of the decision of the Board.

(c) *Administrator does not act after reviewing a Board decision*

If the Administrator notifies the parties that he or she has decided to review a Board decision and then does not make a decision within the 60 days allotted for his or her review, this subsequent inaction constitutes an affirmance allowing a provider an additional 60 days in which to file for judicial review, beginning with the date the Administrator's time expires for taking action under Sec. 405.1875(g)(2).

(d) *Matters not subject to judicial review*

Certain matters affecting payments to hospital under the prospective payment system are not subject to judicial review, as provided in section 1886(d)(7) of the Act and Sec. 405.1804.

(e) *Group appeals*

Any action under this section by providers that are under common ownership or control (see Sec. 413.17 of this chapter) must be brought by the providers as a group with respect to any matter involving an issue common to the providers.

(f) *Venue for appeals*

An action for judicial review must be brought in the District Court of the United States for the judicial district in which the provider is located (or, effective April 20, 1983, in an action brought jointly by several providers, the judicial district in which the greatest number of such providers are located) or in the District Court for the District of Columbia.

Effective April 20, 1983, any action for judicial review by providers under common ownership or control (Sec. 413.17 of this chapter), must be brought by such providers as a group with respect to any matter involving an issue common to the providers.

(g) *Service of process*

Process must be served as described under 45 CFR Part 4.

[48 FR 39836, Sept. 1, 1983, as amended at 48 FR 45774, Oct. 7, 1983; 51 FR 34793, Sept. 30, 1986]

# EXHIBIT B

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C3-01-20
Baltimore, Maryland 21244-1850
Telephone 410-786-3176 Facsimile 410-786-0043



**Office of the Attorney Advisor**

NOV - 1 2007

**VIA FACSIMILE AND**                              **RECEIVED**
**FIRST CLASS MAIL**
                                                   NOV 0 5 2007


Robert L. Roth, Esquire
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 2004-2595


Re:   Hackensack University Medical Center, PRRB Case No. 06-2296; Crowell & Moring 87-
      93 DSH/SSI Equitable Tolling Group, PRRB Case No. 06-2357G; UHS 87-94 DSH/SSI
      Equitable Tolling Group, PRRB Case No. 06-2359G; Franklin Hospital Medical Center,
      PRRB Case No. 06-2355; Long Island Jewish Medical Center, PRRB Case No. 06-2352;
      North Shore University Hospital, PRRB Case No. 06-2354; Southside Hospital, PRRB
      Case No. 06-2356


Dear Mr. Roth:

This is to advise that the Administrator of the Centers for Medicare & Medicaid Services (CMS)
has declined to review the decision entered by the Provider Reimbursement Review Board in the
captioned case.

If the Provider wishes to obtain judicial review of the matter, civil action must be initiated within
60 days of the date the Board's decision was received in accordance with 42 CFR 405.1877.

                              Sincerely yours,


                              Jacqueline R. Vaughn
                              Attorney Advisor


Enclosure

cc:  Ms. Linda Uzzle, Intermediary's Representative

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C3-01-20
Baltimore, Maryland 21244-1850
Phone 410-786-3176 Facsimile 410-786-0043



_____

Office of the Attorney Advisor
_____

Re: <u>Hackensack University Medical Center</u>, PRRB Case No. 06-2296; <u>Crowell & Moring 87-93 DSH/SSI Equitable Tolling Group</u>, PRRB Case No. 06-2357G; <u>UHS 87-94 DSH/SSI Equitable Tolling Group</u>, PRRB Case No. 06-2359G; <u>Franklin Hospital Medical Center</u>, PRRB Case No. 06-2355; <u>Long Island Jewish Medical Center</u>, PRRB Case No. 06-2352; <u>North Shore University Hospital</u>, PRRB Case No. 06-2354; <u>Southside Hospital</u>, PRRB Case No. 06-2356

Pursuant to 42 CFR 405.1875(d)(2), I recommend that the Administrator, Centers for Medicare & Medicaid Services, decline to review the decisions entered by the Provider Reimbursement Review Board in these cases.


Jacqueline R. Vaughn
Attorney Advisor



APPROVED:


Date: 10/26/07

Herb B. Kuhn
Deputy Administrator
Centers for Medicare & Medicaid Services

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Auburn Regional Medical Center, et al.<br>202 North Division Street<br>Auburn, Washington 98001 | Michael O. Leavitt, Secretary<br>Department of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201 |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF          88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT          11001
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Robert L. Roth, Esq.<br>Crowell & Moring LLP<br>1001 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004 | Jeffrey A. Taylor<br>United States Attorney for the District of Columbia<br>555 4th Street, N.W.<br>Washington, D.C. 20530 |

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

○ 3 Federal Question
(U.S. Government Not a Party)

◉ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ◉ C. *Administrative Agency Review* | ○ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☒ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. *General Civil (Other)*     OR     ○ F. *Pro Se General Civil* |
|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

<table>
<tr><td>

○ **G.** *Habeas Corpus/ 2255*

☐ 530 Habeas Corpus-General
☐ 510 Motion/Vacate Sentence

</td><td>

○ **H.** *Employment Discrimination*

☐ 442 Civil Rights-Employment
(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)

*(If pro se, select this deck)*

</td><td>

○ **I.** *FOIA/PRIVACY ACT*

☐ 895 Freedom of Information Act
☐ 890 Other Statutory Actions
(if Privacy Act)

*(If pro se, select this deck)*

</td><td>

○ **J.** *Student Loan*

☐ 152 Recovery of Defaulted Student Loans (excluding veterans)

</td></tr>
</table>

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
This action arises under 42 U.S.C. 1395 et seq. and 5 U.S.C. 551 et seq. for declaratory and other relief relating to Medicare payment.

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** [_____] Check YES only if demanded in complaint<br>**JURY DEMAND:**    YES ☐    NO ☐ |
|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☒    NO ☐    If yes, please complete related case form.

DATE  11/15/07    SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.